**ENGLISHTOWN SPORTSWEAR,
LTD., Plaintiff,**

v.

**Allan TUTTLE and Patton, Boggs &
Blow, Defendants.**

**No. 82 Civ. 5202(MEL).**

United States District Court,
S. D. New York.

Sept. 21, 1982.

---

Blum, Kaplan, Friedman, Silberman & Beran, New York City, for plaintiff.

David C. Todd, Patton, Boggs & Blow, Washington, D. C., for defendants.

Gold, Farrell & Marks, New York City, local counsel for Patton, Boggs & Blow, for the service of papers.

LASKER, District Judge.

This is a most unusual case, asking for unusual relief. On its face, it appears to be merely a motion for disqualification. However, it has been brought as a plenary action seeking an injunction. It asks extraordinarily broad relief; to wit, to prevent an attorney from representing his client not only in existing litigation or even potential litigation, but also from advising him on any subject as to which plaintiff *might* have an adverse interest.

Englishtown Sportswear, Ltd. ("Englishtown"), a manufacturer of clothing bearing the trademark "Sergio Valente" is currently involved in litigation against an individual named Sergio Valente before the United States Patent and Trademark Office ("PTO"). Allan Tuttle and his law firm, Patton, Boggs & Blow ("Tuttle") represent Valente in that action. The case at bar seeks to disqualify Tuttle from representing Valente in that action and in all other matters in which plaintiff may have an adverse interest. The alleged source of disqualification is a telephone call between Englishtown's counsel and Tuttle which took place prior to Tuttle's engagement by Valente. The nature and contents of the conversation are disputed. Tuttle states that the call took place while he was in Italy on an unrelated matter, borrowing the office of a friend, and that the friend's associate asked him to participate in the call solely to assist with translation because the callers did not speak Italian. He says that the call lasted less than five minutes, and concerned procedural matters only. (Affidavit of Allan Tuttle). By contrast, Robert Kaplan, Englishtown's general counsel, states that the conversation contained confidential information as to Englishtown's litigation strategy vis-a-vis Valente, and that he questioned

Tuttle scrupulously as to possible conflicts before allowing him to take part in the call. (Affidavit of Robert J. Kaplan).

Englishtown contends that Tuttle should be enjoined from representing Valente because Tuttle received confidential information from Englishtown's counsel relating to the dispute between the two parties while Tuttle was acting as an agent or liaison for Englishtown's Italian counsel. Tuttle answers that his contact with Englishtown was peripheral at best, and that he learned nothing confidential. He moves to dismiss the action on the grounds that the PTO has exclusive jurisdiction over disqualification of an attorney in a matter pending before it and that Englishtown has failed to exhaust its administrative remedies.

■ The courts of this Circuit are "quite hesitant" to disqualify an attorney, and will do so only if it appears that the attorney's conduct will tend to " 'taint the underlying trial.' " *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979), *quoting W. T. Grant Co. v. Haines,* 531 F.2d 671 (2d Cir. 1976). The reasons for judicial reluctance in this area have been frequently noted:

> "The attorney is the client's choice. Disqualification is wasteful and time-consuming. Only where the attorney's unprofessional conduct may affect the outcome of the case is there any necessity to nip it in the bud. Otherwise conventional disciplinary machinery should be used and, if this is inadequate, the organized bar must assume the burden of making it effective as a deterrent."

*Id.,* (Mansfield, J., concurring).

■ Even accepting Kaplan's version of the phone call as accurate, Tuttle's prior involvement with Englishtown was de minimis. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2d Cir. 1975), teaches that:

> "there is reason to differentiate for disqualification purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery for a limit-

ed and specific purpose relating solely to legal questions."

*Id.* Tuttle, at most, "enter[ed] briefly on the periphery," *id.;* his contact with Englishtown was "non-existent or fleeting," *id.,* at 757. Thus, even if Englishtown were to establish that its version of the facts is correct, it would be unlikely to satisfy the "high standard of proof on the part of one who seeks to disqualify . . . counsel." *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir. 1978).

Accordingly, Englishtown has failed to satisfy the requisites for a preliminary injunction:

"(A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir. 1981). Its showing on the merits is weak, and the balance of hardships is at least evenly balanced between Englishtown's interest in disqualifying counsel and Valente's interest in retaining the counsel of his choice.

Moreover, Tuttle's contention that this matter properly belongs before the PTO is persuasive. Congress has established a procedure pursuant to which counsel may be excluded or suspended from practice before the PTO for reasons of professional misconduct. 37 U.S.C. § 32. The standards of professional conduct set forth in the Code of Professional Responsibility are incorporated into the PTO's standards of ethical conduct. 37 C.F.R. § 2.13. The administrative disqualification procedure provides for notice, an opportunity for hearing, and a right to review of an adverse decision by the United States District Court for the District of Columbia.

The fact that Congress developed an administrative procedure for disqualification of attorneys before the PTO is a strong indication of Congressional intent that such matters be determined by the agency:

"[W]here Congress has built up a well-defined administrative system for the resolution of a class of disputes . . . courts are reluctant either to interrupt or anticipate agency determinations because such bypasses seriously impair expeditious resolution and result in the forfeiture of administrative expertise."

*Fairchild, Arabatzis & Smith, Inc. v. Sackheim,* 451 F.Supp. 1181, 1184 (S.D.N.Y. 1978). Moreover, the availability of an administrative remedy acts as a "constraint on the court's equity power (reflecting equity's reluctance to intervene when the law provides an adequate remedy.)" *Id.*[1]

A member of the Patton, Boggs & Blow firm has stated by affidavit that the only matters adverse to Englishtown in which the firm represents Valente are those before the PTO. (Affidavit of Domenico De Sole). Englishtown contends that any counselling or other legal services provided to Valente in connection with the sale of his name are adverse to Englishtown, and that the reference of the matter to the PTO would be inadequate because the PTO cannot enjoin defendants from providing legal services to Valente other than those before the agency.

As to matters before the PTO, the proper forum for disqualification of an attorney is the PTO. With respect to other legal services provided by defendants to Valente, the possibility that they will prove to be adverse to plaintiff is too speculative to warrant the drastic remedy of disqualification or injunctive relief.

The motion to dismiss is granted to the extent the complaint seeks relief relating to the pending PTO litigation. The motion for

---

1. By letter of September 8, 1982, Englishtown submits a ruling by the PTO dated August 24, 1982, which Englishtown contends demonstrates that the PTO concedes that we have jurisdiction over this action. We disagree with Englishtown's interpretation of the ruling. The brief opinion of the PTO states only that this action is pending, and that they will defer their ruling until receiving ours. There is no indication that the PTO was presented with or considered the question of our jurisdiction.

preliminary injunction is denied. Further proceedings in this action are stayed, subject to dissolution of the stay for good cause shown.

It is so ordered.